# EXHIBIT A



## Artist Services Agreement

**This agreement made Thursday, January 19, 2012** between Mx Live Entertainment INC. Located at 3 Hutton Centre Dr. Suite 810, South Coast Metro, CA. 92707 (hereinafter referred to as "Agent") furnishing the services of Alejandra Guzman and Moderatto (hereinafter referred to as "Artist") and Viva Entertainment Group. Located at: 1106 W. Lawrence Ave. Chicago IL 60640 (hereinafter referred to as "Purchaser").

It is mutually agreed between the parties as follows:

The Purchaser hereby engages the Agent and the Agent hereby agrees to furnish the entertainment hereinafter described, upon all the terms and conditions herein set forth, including those contained in pages 1, 2 and 3 here of entitled "Additional Terms and Conditions."

1. Places of Engagement: Laredo Entertainment Center
   Located at: 6700 Arena Blvd.
   Laredo, TX 78041

2. Date(s) of Engagement: Wednesday, February 29, 2012.

   a. Number of Shows: One (1)
   b. Time of Shows: (TBD) Not to exceed 11:30 PM
   c. Length of Shows: 75-90 minutes
   d. Admission Price: Not to exceed $100.00

3. Billing: Shall receive 100% Headliner and billing

4. Full Price Agreed Upon: $55,000.00 US Dollars guarantee net of taxes and fees plus expenses.

Purchaser shall pay and provide:

a. **Technical rider as per artist's specifications with all the labor personnel to operate the load in, sound check, show and load out.**

b. Local ground transportation; two (2) for 15 Passenger Vans and One (1) SUV.

c. Catering as per Catering rider (See attached)

www.mxlivent.com



    d. **All personnel to operate the event, including but not limited to Venue staff, security, police, ushers, and medical personnel;**

    e. All necessary local, state and city permits and/or licenses required for the engagement.

    f. Provide Artist and Artist's musicians and staff with all credentials required for access to the venue and its grounds.

    g. 40 comp tickets for artist/management use per date.

5. All payments shall be paid by Purchaser in U.S. funds via wire transfer as follows:

    a. $27,500.00 USD (50 % artist Guarantee) shall be paid to and in the name of Agent, MX Live Entertainment INC, via wire transfer not later than Monday, January 23, 2012.

    b. $27,500.00 USD (Balance) shall be paid to and in the name of Agent, Mx Live Entertainment INC, in cash not later than 6:00 PM on Wednesday, February 29, 2012.

6. The tour has a National Sponsorship for the 2012, the deliverables are as follows:

    a. 50 tickets promotions and show marketing

    b. The logo inclusion in all advertising materials including but not limited to, Radio, Flyers, Online, Printed ads, TV etc.

    c. The activation on site which includes: Signage, Video Loops, Gobos, Brand ambassadors, backstage and VIP Area usage the entire night, Branding at the entrance and parking lot.

**THERE SHALL BE ABSOLUTELY NO ADVERTISING OR ON-SALE UNTIL A 50% DEPOSIT VIA WIRE TRANSFER AND SIGNED CONTRACT/RIDER ARE RECEIVED BY MX LIVE ENTERTAINMENT, INC., PROMOTER AGREES TO USE ONLY FOR ADVERTISING THE AD MATERIALS APPROVED BY THE AGENT OR ARTIST MANAGEMENT AND ALSO INCLUDE THE WEBSITE IN ALL THE PRINTS AND ADVERTISING FOR THIS EVENT.**

www.mxlivent.com



All bank wires should be directed to the following address:

Bank of America
3730 S. Bristol St.
Santa Ana, CA. 92704
Account: # 24438-73432
ABA# 122000661
WIRE ROUTING (INCOMING US): 026009593
DIRECT DEPOSIT ROUTING (US): 122000030
SWIFT CODE (WORLDWIDE): BOFAUS3N
Account name: **MX Live Marketing Group Inc.**

ADDITIONAL TERMS AND CONDITIONS CONTINUED ON PAGES 4, 5, 6 AND 7.

In Witness Whereof, the parties hereto have set their hands and seals on he date first above written. (Please initial all pages including technical rider)

Purchaser: Viva Entertainment Group.

By: Tony Castaneda

Artist: Alejandra Guzman and Moderatto

By: Jorge Garcia
MX Live Entertainment (Agent)

www.mxlivent.com



## Additional Terms and Conditions

6. Purchaser shall first apply any and all receipts derived from the entertainment presentation to the payments required hereunder. All payments shall be made in full without any deductions whatsoever. Purchaser will advise Agent, promptly upon request of the admissions prices for the entertainment presentation.

7. Purchaser agrees to furnish and pay for at its own expense (a) on the date and at the time of the performance(s) above-mentioned all that is necessary for the proper presentation of the entertainment presentation, including without limitation a suitable theater, hall or auditorium, well-heated, ventilated, lighted, clean and in good order, stage curtains, and public address system in perfect working condition including microphone(s) in number and quality required by Artist, dressing rooms, all necessary electricians and stage hands, all lights, tickets, house programs, all licenses (including musical performing rights licenses), special police, ushers, ticket sellers, ticket takers, appropriate and sufficient advertising in the principal newspapers, (b) all music royalties in connection with Artist's use of music, and in addition, the costs of any musicians (including contractor) other than those furnished by Artist as part of Artist's regular company (c) all amusement taxes, (d) if Artist so requires, all necessary facilities, electricians, stage hands and other personnel for lights and dress rehearsals, and (e) all other items and personnel (including but not limited to any and all personnel, including musicians, as may be required by any national or local union(s)) required for the proper presentation of the entertainment presentation hereunder, and any rehearsals therefore, except for those items and personnel which Artist here in specifically agrees to furnish. Agent or Artist shall have the right to name the local music contractor and to approve the musicians hired locally.

8. In the event of sickness or of accident to Artist, or if a performance is prevented, rendered impossible or infeasible by any act or regulation of any public authority or bureau, civil tumult, strike, epidemic, interruption in or delay of transportation services, war conditions or emergencies or any other similar or dissimilar cause beyond the control of Artist, it is understood and agreed that there shall be no claim for damages by Purchaser and Artist's obligations as to such performances shall be deemed waived.

9. In the event of such non-performance for any reason other that the ones stated in paragraph (8), if Artist is ready, willing and able to perform,

www.mxlivent.com





Purchaser shall pay the full compensation hereunder, otherwise, the monies (if any) advanced to Artist hereunder, shall be returned on a pro-rata basis. Inclement weather rendering performance impossible, infeasible or unsafe shall not be deemed a force majeure event and payment of the agreed upon compensation shall be made notwithstanding. If Purchaser and Agent disagree as to whether rendition of performance(s) is impossible, not feasible or unsafe because of inclement weather, Agent's determination as to performance shall prevail

10. In the event Purchaser refuses or neglects to provide any of the items or to perform any of its obligations herein stated, and/or fails to make any of the payments as provided herein, Artist shall have the right to refuse to perform this contract, shall retain any amounts theretofore paid to Agent or Artist by Purchaser, and Purchaser shall remain liable to Artist for the agreed price herein set forth. In addition, if , on or before the date of any scheduled performance, Purchaser has failed, neglected, or refused to perform any contract with any other performer for any other engagement, or if the financial standing or credit of Purchaser has been impaired or is in Agent's opinion unsatisfactory, Agent shall have the right to demand the payment of the guaranteed compensation forthwith. If Purchaser fails or refuses to make such payment forthwith, Agent shall have the right to cancel this engagement by notice to Purchaser to that effect, and to retain any amounts theretofore paid to Agent by Purchaser and Purchaser shall remain liable to Agent and Artist for the agreed price herein set forth.

11. The entertainment presentation to be furnished by Agent hereunder shall receive billing in such order, form, size and prominence as directed by Agent in all advertising and publicity issued by or under the control of the Purchaser. Artist's name or likeness may not be used as an endorsement or indication of use of any product or service not in connection with any corporate sponsorship or tie-up, commercial tie-up or merchandising without Agent or Artist's prior written consent.

12. Agent or Artist shall have the exclusive right to sell souvenir programs, ballet books, photographs, records and any and all types of merchandise including, but not limited to, articles of clothing (i.e., T-shirts, hats, etc.), posters, stickers, etc., o the premises of the place(s) of performance without any participation in the proceeds by Purchaser subject, however, to concessionaire's requirements, if any

13. Unless stipulated to the contrary in writing, Purchaser agrees that Agent may cancel the engagement hereunder without liability by giving the Purchaser notice thereof at least thirty (30) days prior to the commencement date of the engagement hereunder. Agent shall also have the right to terminate this agreement without liability in the event



Purchaser fails to sign and return this Contract within 10 days.

14. Agent or Artist shall have exclusive control over the production, presentation and performance of the engagement hereunder, including, but not limited to, the details, means and methods employed in fulfilling each obligation of Artist hereunder in all respects. Agent or Artist shall have the sole right, as Agent or Artist may see fit, to designate and change at any time the performing personnel other than the Artist(s) specifically named herein.

15. Purchaser agrees (a) to comply promptly with Artist's directions as to stage settings for the performance hereunder, (b) that no performers other than those to be furnished by Agent hereunder will appear on or in connection with the engagement hereunder, (c) that no stage seats are to be sold or used without Agent's prior written consent, and (d) that the entertainment presentation will not be included in a subscription or other type of series without the written consent of Agent.

16. It is agreed that Producer signs this contract as an independent contractor and not as an employee. This contract shall not, in any way be construed so as to create a partnership, or any kind of joint undertaking or venture between the parties hereto, nor make Agent or Artist liable in whole or in part for any obligation that may be incurred by Purchaser in Purchaser's carrying out any of the provision hereof or otherwise.

17. Nothing in this Agreement shall require the commission of any act contrary to law or any rules or regulations of any union, guild or similar body having jurisdiction over the services and personnel to be furnished by Agent to Purchaser hereunder. If there is any conflict between any provision of this Agreement and any law, rule or regulation, such law, rule or regulation shall prevail and this Agreement shall be curtailed, modified, or limited only to the extent necessary to eliminate such conflict. Purchaser agrees to comply with all regulations and requirements of any union(s) that may have jurisdiction over any of the said materials, facilities and personnel to be furnished by Purchaser.

18. In the event any inconsistency between the provision of this contract and the provision of any riders, addenda, exhibit or any other attachments hereto, the parties agree that the provision most favorable to Agent and Artist shall control.

19. Purchaser hereby indemnifies and holds Agent and Artist, as well as their respective agents, representatives, principals, employees, officers and directors, harmless from and against any loss, damage or expense, including reasonable attorney's fees, incurred or suffered by or threatened against Agent or Artist or any of the foregoing in connection with or as a





result of any claim for personal injury or property damage or otherwise brought by or on behalf of any third party person, firm or corporation as a result of or in connection with the engagement, which claim does not result from the active negligence of the Artist and/or Agent.

20. Mx Live Entertainment, INC. acts herein only as agent for Artist and is not responsible for any act of commission or omission on the part of either Artist or Purchaser. In furtherance thereof and for the benefit of Mx Live Entertainment, INC., it is agreed that neither Purchaser nor Artist will name or join Mx Live Entertainment, INC. as a party in any civil action or suit arising out of, in connection with, or related to any act(s) of commission or omission of Purchaser or Artist or Agent.(booking agent is responsible for all legal terms and conditions as represented in the booking agreement and is legally responsible for honoring on behalf of the artist those terms and conditions as outlined in the artist service agreement)

21. This contract (a) cannot be assigned or transferred without the written consent of Mx Live Entertainment, INC., (b) contains the sole and complete understanding of the parties hereto and (c) may not be amended, supplemented, varied or discharged, except by an instrument in writing signed by both parties. The validity, construction and effect of this contract shall be governed by the laws of the State of California, regardless of the place of performance. THE PERSON EXECUTING THIS AGREEMENT ON PURCHASER'S BEHALF WARRANTS HIS/HER AUTHORITY TO DO SO, AND SUCH PERSON HEREBY PERSONALLY ASSUMES LIABILITY FOR THE PAYMENT OF SAID PRICE IN FULL. The terms "Agent", "Artist", and "Purchaser" as used herein shall include and apply to the singular, the plural and to all genders.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

